### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF FLORIDA

**Civil Action No.  9:15-CV-80164-KAM**

| | |
|---|---|
| **CARYN PINCUS, an individual, on** | ) |
| **behalf of herself and all others similarly** | ) |
| **situated,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **SPEEDPAY, INC.,** | ) |
| **a New York corporation,** | ) |
| | ) |
| **Defendant.** | ) |

---

### DEFENDANT SPEEDPAY, INC.'S MEMORANDUM IN SUPPORT OF
### ITS MOTION TO DISMISS

---

      Defendant Speedpay, Inc. ("Speedpay"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Local Rule 7.1(c), submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Complaint.

### <ins>INTRODUCTION</ins>

      Plaintiff's claims for unjust enrichment, money had and received, and violation of the Florida Deceptive and Unfair Trade Practice Act ("FDUPTA") are premised entirely on alleged violations of two Florida statutes – section 501.0117 and section 560.204.  Section 501.0117 prohibits merchants from imposing a surcharge on customers who pay for goods or services with credit cards.  It is a <ins>criminal</ins> statute providing that a violator is guilty of a second-degree misdemeanor.  Section 560.204 requires "money transmitters" to have a license to operate in Florida.  It is a <ins>regulatory</ins> statute administered by the Florida Office of Financial Regulation. Neither statute expressly authorizes private civil lawsuits, nor has any court allowed a private right of action under either statute.  In fact, this Court has expressly held that there is no private right of action under a companion provision of the Florida Money Transmitters' Code.  Because Plaintiff has no right to sue under these statutes, and all of her state-law claims are predicated on alleged violations of these statutes, the Complaint must be dismissed.

Even if there *could* be a private right of action associated with these statutes, the Complaint still cannot stand.  Plaintiff fails to plausibly allege that her transaction with Speedpay invoked either statute, much less violated it.  Plaintiff merely parrots the language of each statute and asserts, without the required factual support, that Speedpay failed to comply.  Such conclusory pleading provides an additional basis for dismissal because the Complaint cannot withstand scrutiny under the *Twombly/Iqbal* standard.

## PROCEDURAL HISTORY

Plaintiff filed her purported class-action Complaint on February 10, 2015.  (Doc. 1.)  The Complaint alleges that Speedpay acted unlawfully when Plaintiff used its services to pay her bill to Florida Power and Light Company ("FPL").[1]  Plaintiff seeks certification of a Florida statewide class and two subclasses based on Speedpay's charging a fee to process consumer payments to third-party payees during the four years preceding the filing of the Complaint.[2]  (*Id.* ¶ 34.)  Speedpay's registered agent was served with the Complaint and Summons on February 12, 2015.  On March 8, 2015, the Court granted Speedpay's unopposed motion to extend the time to respond to the Complaint through April 6, 2015.  (Doc. 7.)

## ALLEGATIONS OF THE COMPLAINT[3]

Plaintiff, a resident of Palm Beach County, Florida, receives her electricity service from FPL.  (Doc. 1, ¶ 21.)  Her family "occasionally" makes payments to FPL via credit card.  (*Id.* ¶ 22.)  On the most recent occasion, February 6, 2015, Plaintiff made a credit card payment by calling FPL's automated "Pay by Phone" toll-free number.  (*Id.* ¶ 23.)  After selecting the credit card payment option, she was automatically transferred to Speedpay's automated telephone payment system.  (*Id.* ¶¶ 25-26.)  When Plaintiff used her credit card to pay her FPL bill, Speedpay charged her a $3.25 fee.  (*Id.* ¶¶ 27-28.)

According to Plaintiff, FPL provides electricity to more than four million residential customers and 500,000 commercial customers.  (Doc. 1, ¶ 29.)  FPL "relies" on Speedpay to

---

[1] FPL is not a party to the case.  Speedpay is the sole defendant.

[2] With the exception of one subclass, Plaintiff's request for class certification is not specific to FPL transactions.

[3] Although the Court must treat the Plaintiff's allegations as true for the purposes of adjudicating Speedpay's Motion to Dismiss, *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006), Speedpay reserves its right to contest these allegations at the appropriate time.

"process credit card payments made by its customers" and "to transmit the money it obtains back to [FPL]." (*Id.* ¶ 30.) Speedpay charges $3.25 to FPL's residential customers and $14.95 to its commercial customers for each transaction, which Plaintiff alleges accounts for more than 10 percent of bill payments received by FPL. (*Id.* ¶¶ 31-32.)

Plaintiff contends that section 501.0117 prohibits Speedpay from charging a fee for credit card transactions. Plaintiff also contends that Speedpay acted as an unlicensed money transmitter in her transactions with FPL in violation of section 560.204. (*Id.* ¶¶ 7-19.) Based solely on these alleged statutory violations, Plaintiff seeks to recover from Speedpay under the theories of unjust enrichment, money had and received, and violations of the FDUPTA. (*Id.* ¶¶ 42-67.)

Plaintiff requests to represent a class of Floridians who allegedly "paid money to Speedpay ... to transmit said money to another person" and who were charged a fee for this service during the four years preceding the filing of the Complaint. (*Id.* ¶ 34.) Plaintiff also requests certification of two subclasses: (1) a "FPL subclass" consisting of persons who used Speedpay to pay their FPL utility bills by credit card and who paid a charge to Speedpay for this service, and (2) a "FDUTPA subclass" consisting of persons who used Speedpay to pay any third party by credit card and who paid a charge to Speedpay for this service. (*Id.*)

## ARGUMENT

### I.   THE COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT BECAUSE THE STATUTES AT ISSUE DO NOT ALLOW A PRIVATE CAUSE OF ACTION.

All six counts of Plaintiff's Complaint are based entirely on the erroneous premise that Plaintiff can sue for alleged violations of sections 501.0117 and 560.204 under the guise of other state-law claims. However, the reality is that there is <u>no</u> recognized private right of action under either statute. Section 501.0117 is a <u>criminal</u> statute providing that a violator is guilty of a second-degree misdemeanor. Section 560.204 is a <u>regulatory</u> statute enforced by the Florida Office of Financial Regulation. Both statutes were enacted to protect the general public by regulating certain financial transactions. However, the Florida Legislature chose <u>not</u> to create private causes of action for these statutes. Because Plaintiff's attempted pursuit of these claims circumvents the will of the Legislature, her Complaint must be dismissed.

### A.  Plaintiff Lacks Standing To Sue under Section 501.0117.

#### 1.  The Florida Legislature Did Not Create an Express Private Cause of Action.

Section 501.0117 states:

(1)   A seller or lessor in a sales or lease transaction may not impose a surcharge on the buyer or lessee for electing to use a credit card in lieu of payment by cash, check, or similar means, if the seller or lessor accepts payment by credit card. A surcharge is any additional amount imposed at the time of a sale or lease transaction by the seller or lessor that increases the charge to the buyer or lessee for the privilege of using a credit card to make payment. . . . The term "credit card" includes those cards for which unpaid balances are payable on demand. This section does not apply to the offering of a discount for the purpose of inducing payment by cash, check, or other means not involving the use of a credit card, if the discount is offered to all prospective customers.

(2)   A person who violates the provisions of subsection (1) is guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.

The statute expressly creates criminal liability if its provisions are violated.  It does not authorize consumers to file civil lawsuits.

#### 2.  There Is No Basis for Finding an Implied Private Right of Action for Asserted Violations of Section 501.0117.

It would also be improper for this Court to imply a private right of action under the statute.  A plaintiff has no implied private right of action under a Florida statute unless the Legislature intended for there to be one.  *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541, 551 (Fla. 2012).  Courts must determine the Legislature's intent by analyzing a statute's text, content and purpose, with the "primary guide" being the language of the statute. *Horowitz v. Plantation Gen. Hosp. Ltd. P'ship*, 959 So.2d 176, 182 (Fla. 2007); *Borden v. East–European Ins. Co.*, 921 So.2d 587, 595 (Fla. 2006);  *see also Transamerica Mortg. Advisors, Inc. v. Lewis,* 444 U.S. 11, 15 (1979) ("The question whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction.")  The intent not to create a private right of action for violations of section 501.0117 is evident from the Legislature's decision to exclude it from Florida's Civil Remedies for Criminal Practices Act, Fla. Stat. §§ 772.101, *et seq*. (the "FCRCPA"), and from an analysis of the text, context and purpose of section 501.0117.

*a. A Private Cause of Action Is Noticeably Absent from Section 501.0117.*

Chapter 501, part I of the Florida Statutes, in which section 501.0117 is located, does not include a provision creating an overall private right of action for violations of its component provisions.  In fact, the general rule in Florida is that, if a criminal statute does not expressly provide for a private right of action, then one should not be inferred.  *Fischer v. Metcalf*, 543 So. 2d 785, 790-91 (Fla. 3d Dist. Ct. App. 1989)  ("In construing a criminal statute, " 'nothing that is not clearly and intelligently described in [a statute's] very words, as well as manifestly intended by the Legislature, is to be considered as included within its terms.' ") (quoting *Earnest v. State*, 351 So.2d 957 (Fla. 1977)).  Applying this rule, the Florida Court of Appeals declined to find an implied private right of action when construing a statute that, like section 501.0117, classified the conduct it proscribed as a misdemeanor, but had no language creating civil liability.  *Id.* at 91 (holding that a plaintiff was not entitled to sue based on a mental health professional's violation of a criminal statute making it a misdemeanor for failing to report alleged child abuse).  The same analysis bars Plaintiff from proceeding based on section 501.0117 here.

Plaintiff's invocation of section 501.0117 is also contrary to the Florida Legislature's decision to exclude the provision from the FCRCPA, which delineates the specific criminal activity that allows an individual cause of action for civil liability under Florida law and provides for recovery of treble damages and attorneys' fees.  Fla. Stat. § 772.102(1) (providing an exhaustive list of criminal activity for which there can be civil liability under the FCRCPA); Fla. Stat. § 772.104 (creating a private right of action based on criminal activity covered by the statute).  The FCRCPA lists a number of criminal statutes that also create private civil remedies, but section 501.0117 is not among them. *Id.* § 772.102(1).  This omission is telling, as the Legislature expressly created a private right of action for violations of <u>other</u> provisions of chapter 501, but <u>not</u> for section 501.0117.  *Id.* § 772.102(1)(a)(4) (defining the criminal activity for which a private cause of action exists to include a "crime that is chargeable by indictment or information under ... [p]art IV of chapter 501, relating to telemarketing.").   Under these circumstances, it would be improper to allow Plaintiff to sue for an alleged violation of this statute.

>    b.   *The Text, Content and Purpose of Section 501.0117 Indicate That
>         There Is No Private Right of Action.*

The Florida Supreme Court has held that regulatory or penal statutes that "make[]
provision to secure the safety or welfare of the public as an entity" and "do[] not purport to
establish civil liability" must not be construed as establishing civil liability.  *Murthy v. N. Sinha
Corp.*, 644 So.2d 983, 986 (Fla. 1994).  In *Murthy*, dissatisfied homeowners attempted to sue a
corporate builder's stockholder and statutory qualifying agent based on a Florida statute
requiring the agent to obtain necessary state certifications for the company and to supervise and
control the company's contracting and construction activities.  *Id.* at 984.  The trial court
dismissed the homeowners' claims against the agent for negligent performance of a contract,
discharge of a fraudulent lien and violation of Florida's minimum building codes.  The Florida
Supreme Court upheld the dismissal, finding that the homeowners had no private right of action
under the statute.  *Id.* at 984-85, 987.  The court declined to infer a private cause of action
because:  (1) the statute at issue was regulatory in nature; (2) the statute included an enforcement
mechanism (a regulator) other than a private right of action; (3) there was "no evidence in the
language of the statute or the statutory structure that a private cause of action ... was
contemplated by the legislature in enacting th[e] statute"; (4) the language of the statute
"indicate[d] that it was created merely to secure the safety and welfare of the public by
regulating [a particular] industry"; and (5) the legislative history of the statute did not reveal any
intent to create a cause of action.  *Id.* at 986.  Applying these factors to Plaintiff's allegations
compels the conclusion that there is no private right of action under section 501.0117.

<u>The nature of the statute</u>.  Section 501.0117 regulates commerce and provides for
criminal liability.  Plaintiff's description of the statute as a consumer protection statute does not
strengthen her argument for suing for its alleged violation.  *QBE Ins.*, 94 So. 3d at 551 (finding
no private right of action under a consumer protection statute imposing font and typeface
requirements for notices provided to insured consumers by insurers); *Brannan v. GEICO Indem.,
Co.*, 569 F. App'x 724 (11th Cir. 2014) (holding that a Florida consumer protection statute
requiring disclosure of insurance information within 30 days of receipt of the request did not
provide a private right of action).

<u>Enforcement of the statute</u>.  Section 501.0117 is enforced in the criminal justice system.
The State can prosecute violators for a second-degree misdemeanor, Fla. Stat. § 501.0117(b), and

seek a prison sentence of up to 60 days and a fine of up to $500 or double the pecuniary loss caused by a violation, *id.* §§ 775.082(4)(b), 775.083(1)(e) & (f).  The statute does not require a civil right of action for its enforcement.

Statutory language and structure.  The lack of a private right of action may also be gleaned from the structure of chapter 501.  Section 501.0117 is located in part I of chapter 501.  The chapter includes six other parts.  Part I and part V include several miscellaneous provisions and a few small, self-contained acts that span a number of provisions, such as the "Antifreeze Act of 1978."  Parts II, III, IV, and VI each contain a set of related statutes.  *See, e.g.*, Fla. Stat. §§ 501.201 - 501.213 (containing part II, which codified the FDUPTA).  Section 501.0117 is a miscellaneous standalone provision in part I.

Parts II and IV of chapter 501 provide for a private cause of action if any of their respective provisions are violated.  *See* Fla. Stat. § 501.211 (creating a private right of action for violations of part II); *id.* § 501.625 (creating a private right of action for violations of part IV).  Part I does not, which indicates the Legislature's intent that there should be no civil liability for violating a statute in part I unless that particular statute expressly provides for civil liability.  *See Buell v. Direct Gen. Ins. Agency, Inc.*, 488 F. Supp. 2d 1215, 1218 (M.D. Fla. 2007) ("More telling as to the Florida legislature's intent not to create a private right of action premised on a violation of [a] section ... is the fact that it expressly provided for a cause of action for violating other specific provisions of not only the [larger act] but also of [the] section ... itself."), *aff'd*, 267 F. App'x 907 (11th Cir. 2008).

Indeed, some of the statutes in part I <u>do</u> provide for civil liability.  Sections 501.005 and 501.0051, which govern consumer report security freezes, expressly create a private right of action for injured consumers.   Fla. Stat. §§ 501.005(16), 501.0051(13).   Section 501.137 provides that a mortgage servicer "is liable" to property owners for specified failures to comply with the section's provisions governing the collection and payment of residential hazard insurance premiums.  *Id.* § 50.137(3).   Section 501.1375, governing deposits for residential purchases, contemplates civil litigation and provides for the apportionment of fees and costs.  *Id.* § 501.1375(10).  Other statutes in part I state that a violation of their particular provisions is a violation of the FDUTPA, which, in turn, provides for a private right of action.  *Id.* § 501.0115 (outlawing certain restrictions on service station credit cards and declaring them to be a deceptive trade practice), § 501.0579 (declaring violations of the Commercial Weight-Loss

Practices Act, codified at §§ 501.057 to 501.0581, to be unfair and deceptive trade practices), § 501.1377 (declaring improper conduct by certain entities during the course of residential foreclosure proceedings to be unfair and deceptive trade practices); § 501.203(3)(c) (declaring a violation of a statute to be an unfair and deceptive trade practice), § 501.211 (creating a private right of action for violations of part II).  In contrast, section 501.0117 does not provide for civil liability, nor does it state that a violation of its provisions is an unfair and deceptive trade practice giving rise to civil liability under part II.  Thus, the structure of Chapter 501 and the placement of section 501.0117 within it preclude a finding that there is an implied private right of action.  *See Buell*, 488 F. Supp. 2d at 1218; *Murthy,* 644 So.2d at 986.

Legislative history.    The legislative history of section 501.0117 further demonstrates the Legislature's intent not to create a private right of action.  The Florida Senate first proposed the law in 1986 as Senate Bill 58, which was amended to include a private right of action.  Journal of the Senate, Regular Session 1987, at 234-235.  That bill died in the House Committee on Commerce.  The following year, the statute was enacted in its current form, without a private right of action.  1987 Fla. Sess. Law Serv. 87-43.  The Legislature's repudiation of a private right of action conclusively demonstrates that the Legislature did not intend for Plaintiff to be able to sue for an alleged violation of section 501.0117.

**B.  Plaintiff Lacks Standing To Sue under Section 560.204.**

**1.  The Florida Legislature Did Not Create an Express Private Right of Action.**

Plaintiff fares no better on her claims based on an alleged violation of section 560.204. This section, which is part of the Florida Money Transmitters Code (the "FMTC"), provides that "[u]nless exempted, a person may not engage in, or in any manner advertise that they engage in ... the activity of a money transmitter, for compensation, without first obtaining a license under this part. ..."  The enforcement of this statute is governed by section 560.125, which contains both regulatory and criminal enforcement mechanisms.  Fla. Stat. § 560.125(4)-(6).  Neither section 560.204, nor section 560.0125, expressly authorizes consumers to initiate individual lawsuits.  To the contrary, section 560.125 specifically limits public participation under chapter 560 to the filing of a petition for an injunction in an existing regulator-initiated action by a person "whose substantial interests are affected by [that] proceeding."  Fla. Stat. § 560.125(3).

There is no provision of chapter 560 that creates a private right of action for violations of its component provisions.

### 2.   There Is No Basis for Finding an Implied Private Cause of Action.

#### a.   *This Court Has Held That There Is No Implied Private Right of Action for Violations of the FMTC.*

Lest there be any doubt about an implied right of action, this Court decided that issue in 2003.  In *Compania de Elaborados de Cafe v. Cardinal Capital Mgmt., Inc*., 401 F. Supp. 2d 1270, 1279-80 (S.D. Fla. 2003) (hereinafter "*Cardinal Capital*"), Judge Altonaga held that there is no private right of action under a companion provision of the FMTC.  That decision remains undisturbed.  This Court should apply that holding here to find that Plaintiff cannot sue for alleged violations of section 560.204.

In *Cardinal Capital*, plaintiff alleged that the defendant, an investment company, unlawfully permitted a third party to obtain access to its customers' funds and transmitted those funds at the third party's instructions.  *Id.* at 1275-77.  The plaintiff contended that several Florida statutes, including section 560.111 of the FMTC, imposed certain statutory duties on the investment advisor and that a violation of those duties allowed the plaintiff to sue for negligence. *Id.* at 1275-79.  This Court summarily rejected this premise:   "Section 560.111 ... codifies acts and practices prohibited under the [FMTC]. Neither [this section, nor the Florida Control of Money Laundering in Financial Institutions Act, upon which the plaintiff also relied] creates a private cause of action." *Id.* at 1279.  The Court granted summary judgment to the defendant on this basis and on the alternative basis that the plaintiff had produced no evidence that the statutes were violated. *Id.*

Judge Altonaga's holding that section 560.111 has no private right of action applies with equal force to Plaintiff's claims under section 560.204.  The statutes are related provisions of the FMTC.  They each prohibit specified conduct by persons seeking to engage in the money transmission business.  For each statute, the Florida Legislature decided that it would not create a private right of action for consumers.  As such, this Court should dismiss Plaintiff's claims based on the alleged violation of section 560.204.

#### b.   *The Text, Content and Purpose of Section 560.204 Confirm That There Is No Private Right to Sue.*

An analysis of the *Murthy* factors confirms the Legislature's intent not to create a private

right of action based on section 560.204.  *See supra*, § I(A)(2)(b) (describing the factors for determining whether the Legislature intended there to be a private right to sue).

The nature of the statute.  Section 560.204 is part of the FMTC, which is a licensing and regulatory statute that does not provide a private right of action.  *Matute v. Main St. Acquisition Corp.*, No. 11-CV-62375, 2012 WL 4513420, at *3-4 (S.D. Fla. Oct. 2, 2012) (dismissing claims against a debt collector for unregistered debt collection activities in violation of a Florida licensing statute because the statute included no private right of action).

Enforcement of the statute.  Instead of imposing civil liability under the statute, the FMTC subjects unlicensed activity, including activity violating section 560.204, to criminal penalties and actions brought by the Florida Office of Financial Regulation.  It empowers the Office to issue a complaint seeking a cease-and-desist order and to impose administrative fines. Fla. Stat. § 560.125(4).  The statute also declares that a person engaging in unlicensed activity is guilty of a first-, second-, or third-degree felony, depending on the amount of the unlicensed activity.  *Id.* § 560.125(5).  Violators face criminal penalties of up to 30 years' imprisonment and $10,000 in fines for a first-degree felony and, for a first violation, additional fines of up to $250,000 or twice the value of the currency transmitted.  *Id.* § 560.125(5) (imposing criminal liability), § 775.082   (establishing the possible prison sentence for a first-degree felony); *id.* § 775.083(1)(b) (establishing the possible fine for a first-degree felony); *id.* § 560.125(6) (adding additional fines for unlicensed money transmitter activity).  Thus, there is no need to create a private civil remedy.

Statutory language and structure.     Chapter 560 is divided into four parts.  Part I includes general provisions that apply to the entire chapter.[4]  The remaining parts contain

---

[4]  The general provisions of part I imbue the Florida Office of Financial Regulation with the authority to supervise regulated activities, examine regulated entities, and penalize violations. Fla. Stat. § 560.205.  It establishes procedures for examinations and investigations and facilitates the Office's ability to perform these functions by imposing record-keeping requirements, by providing immunity to persons who report misconduct to the Office, and by requiring information regarding examinations and investigations to be kept confidential.  *Id*. §§ 560.109, 560.1091, 560.1092, 560.1105, 560.116 & 560.129.  It prohibits certain activities by regulated entities, authorizes the Office to discipline offenders, provides guidance regarding how the Office should exercise that discipline, authorizes regulatory complaints and the imposition of civil penalties by the Office for violations of the chapter, and permits the regulator to obtain injunctive relief or the appointment of a receiver.  *Id.* §§ 560.112, 560.113, 560.114 & 560.1141. Part I also creates reporting requirements for regulated entities.  *Id.* §§ 560.118 & 560.126.  It

additional provisions that apply specifically to transactions involving payment instruments and funds transmission (part II), check cashing and foreign currency exchange (part III), and deferred presentment (part IV).  Section 560.204 is located in part II.

With respect to money transmitters in particular, part II of chapter 560 requires licensure, establishes additional license application requirements and exemptions from licensure, and imposes additional record-keeping requirements.  *Id.* §§ 560.203, 560.204, 560.205, 560.211. Part II further establishes regulatory controls concerning where and how licensees may conduct business, the circumstances under which licensees can use authorized vendors, the minimum capitalization, investment, and bonding requirements for licensees, and the obligation of licensees to transmit payments to intended payees.  *Id.* §§ 560.208, 560.2085, 560.209, 560.210, 560.212.  There is no provision authorizing a civil lawsuit, nor does it create any unfair and deceptive trade practices liability for violations of its provisions.  Thus, the structure of the FMTC, and section 560.204 in particular, do not support a private right of action.

<u>Legislative history</u>.   The legislative history of the FMTC further demonstrates the Legislature's intent <u>not</u> to create a private right of action for violations of section 560.204.  The Florida Legislature originally enacted the FMTC in 1994 as a regulatory and licensing statute. 1994 Fla. Sess. Law Serv. 94-238.  The Legislature amended the statute to provide for greater regulatory and criminal sanctions, but none of these amendments created a private right of action for consumers.  2000 Fla. Sess. Law Serv. 2000-360 § 9.  In 2001, the Legislature amended the FMTC to add part IV of chapter 560, which regulates deferred payment providers and subjects them to FDUPTA liability for violations of that part.  However, the Legislature did not amend the FMTC to impose similar liability for unlicensed activity in violation of part II. 1994 Fla. Sess. Law Serv. 2001-119.  Thus, the Legislature did not intend for individuals to file civil lawsuits based on alleged violations of section 560.204.

---

sets licensing standards, governs license application and renewal procedures, and allows for the surrender of licenses.  *Id.* §§ 560.1401, 560.141, 560.142, 560.143 & 560.115.  It also prohibits engaging in regulated activities without a license and authorizes regulatory and criminal sanctions for unlicensed activity.  *Id.* § 560.125.  It does not authorize a lawsuit initiated by a consumer.

### C. **Plaintiff Has No Legal Basis for Common-Law Claims Based on Section 501.0117 or Section 560.204.**

Plaintiff's claims for unjust enrichment, money had and received, and FDUTPA violations are wholly derivative of her allegations that Speedpay violated sections 501.0117 and 560.204.  (Doc. 1 ¶¶ 42-67.)  Plaintiff cannot create a private a right of action where the Legislature did not intend one by re-characterizing her claims as common-law and FDUPTA claims.  *See Buell*, 267 F. App'x at 910 (affirming the dismissal of a claim for money had and received based on a Florida statute with no private right of action); *Fuller v. Mortg. Elec. Registration Sys., Inc.*, 888 F. Supp. 2d 1257, 1270 (M.D. Fla. 2012) (rejecting common-law claims for civil conspiracy, unjust enrichment, and fraudulent and negligent misrepresentation that were based on violation of a statute with no private right of action); *Carrero v. LVNV Funding, LLC*, No. 11-62439-CIV, 2014 WL 6433214, at *5 (S.D. Fla. Oct. 27, 2014) (dismissing unjust enrichment claim based on registration statute with no private right of action); *Halpin v. David*, No. 4:06-CV-457-RH/WCS, 2009 WL 1753759, at *1 (N.D. Fla. June 22, 2009) (dismissing a FDUPTA claim based on a prison commissary statute on the alternative grounds that the statute did not include a private right and that the claim was independently defective and noting that "[c]harging a fully disclosed but excessive price ordinarily is not a deceptive or unfair trade practice").  Because Plaintiff has no independent right to sue under either section 501.0117 or section 560.204, the Court should dismiss her improper derivative claims for unjust enrichment, money had and received, and violation of the FDUTPA.

## II.     THE COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT BECAUSE IT DOES NOT ALLEGE ANY FACTS SUFFICIENT TO PERMIT AN INFERENCE THAT SPEEDPAY VIOLATED EITHER STATUTE.

Even if a private cause of action were available to Plaintiff, the Complaint should be dismissed for a different reason:  Plaintiff has failed to plead the necessary facts to make a plausible showing that either statute applies to her transaction with Speedpay – much less that Speedpay violated the statutes.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief."  To survive a motion to dismiss under Rule 12(b)(6), "[f]actual allegations must be enough to raise a right to relief above the speculative level" and have "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  A claim has facial plausibility "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard requires a plaintiff to do more than plead facts that "are 'merely consistent' with a defendant's liability" or allege only "a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556-57). A pleading that merely offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or contains "naked assertion[s] devoid of further factual enhancement" is defective. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

On a Rule 12(b)(6) motion, the complaint is construed in the light most favorable to the plaintiff and the facts asserted therein are taken as true. *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006). However, "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts" will not prevent dismissal. *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). Here, even construing the allegations liberally and in the light most favorable to Plaintiff, the Complaint falls well short of the *Twombly/Iqbal* plausibility standard and should be dismissed.

**A. The Complaint Does Not Allege Facts Supporting the Application of Section 501.0117 to Speedpay's Conduct.**

Plaintiff's first three causes of action – for unjust enrichment, money had and received, and FDUPTA violations – are based entirely on Plaintiff's erroneous interpretation of section 501.0117. This criminal statute makes it unlawful for a "<u>seller or lessor</u> in a sales or lease transaction" to impose a credit card payment surcharge. Fla. Stat. § 501.0117(a) (emphasis added). Here, though, the Complaint is entirely bereft of allegations that Speedpay is a "seller or lessor," or that it imposed a surcharge on Plaintiff for paying by credit card, as opposed to some other means.

**1. The Complaint Does Not Allege That Speedpay Is a "Seller or Lessor."**

Section 501.0117 does not define the terms "seller" or "lessor," but other provisions of the Florida Statutes define these terms, in accordance with their ordinary usage, to refer specifically to the entity that provides goods or services to a buyer or lessee and receives money for doing so. *See* Fla. Stat. § 672.103 (d) (defining a seller to be "a person who sells or contracts to sell goods"); Fla. Stat. § 680.1031 (p) (defining a lessor as "a person who transfers the right to possession and use of goods under a lease"); see also BLACK'S LAW DICTIONARY 1391 (8th ed. 2004) (defining "seller" as "[a] person who sells or contracts to sell goods; a vendor" or "[g]enerally, a person who sells anything, the transferor of property in a contract of sale.").

The allegations of Plaintiff's Complaint do not allege that Speedpay sold or leased anything to Plaintiff.  To the contrary, the Complaint alleges that FPL – not Speedpay – was the seller of electrical services to Plaintiff and that Plaintiff used Speedpay's system to pay her bill to FPL.  Thus, Plaintiff has failed to allege sufficient facts to bring her Speedpay transaction within the ambit of section 501.0117.

**2.   The Complaint Does Not Allege That Speedpay Imposed a Surcharge for Credit Card Transactions Only.**

Plaintiff's transaction also is beyond the scope of section 501.0117 because she fails to plead that a fee was charged only when she elected to pay by credit card, as opposed to cash, check, or other means.  By its clear terms, the statute applies only when a seller imposes a surcharge on a buyer who pays by credit card, but does not impose the same surcharge when a buyer pays by other means.  Fla. Stat. § 501.0117 (prohibiting a surcharge to the buyer or lessee "for electing to use a credit card in lieu of payment by cash, check, or similar means").[5]  In rejecting a constitutional challenge to the statute, Judge Hinkle of the Northern District of Florida explained this important difference:

> Florida law allows a merchant to exact a higher price from a customer who pays with a credit card than from a customer who pays with cash.  [Section] 501.0117 restricts the manner in which a merchant may achieve this result. The merchant may give a discount for paying with cash, but the merchant may not exact a surcharge for paying with a credit card.

*Dana's Railroad Supply v. Bondi,* No. 4:14-cv-134-RH/CAS (N.D. Fla. Sept. 2, 2014), *appeal docketed*, No. 14-14426 (11th Cir. Sept. 30, 2014).[6]  If a merchant imposes a surcharge for *both*

---

[5] Debit card payments are similar to cash or check payments.  *See NACS v. Bd. of Governors of Fed. Reserve Sys.*, 746 F.3d 474, 477 (D.C. Cir. 2014) (describing debit cards as including "traditional debit cards, which allow cardholders to deduct money directly from their bank accounts, and prepaid cards, which come loaded with a certain amount of money that cardholders can spend down and, in some cases, replenish"), *cert. denied,* 135 S. Ct. 1170 (2015).

[6] Judge Hinkle's analysis is consistent with the staff commentary concerning the statute, which notes the statement by the Act's sponsor that "cash discounts provide lower prices to the consumer, immediately and directly.  Surcharges add an additional tax to credit card users, at the point of sale, without any corresponding savings to the cash customer. It is not the intent of the sponsor to prohibit ... offering cash discounts."  *Final Staff Analysis of the Fla. House Comm. on Commerce on H.B.* 448 at 4 (1987).  Merchants prefer to charge more for credit transactions than for cash transactions because credit card companies charge the merchants a fee whenever a consumer uses a credit card.  *See id.* at 4 (noting the Florida retail industry's opposition to H.B. 448 based on its contention that the law would require cash customers to subsidize purchases

cash transactions and credit transactions, then the merchant's conduct does not implicate section 501.0117.  Fla. Stat. § 501.0117 (declaring a surcharge unlawful only if it is imposed for a credit card payment "in lieu of" payment by other means).

Here, the Complaint merely alleges that Plaintiff paid an additional surcharge when she paid by credit card.  This allegation, in and of itself, does not invoke the statute.  Before the statute could potentially be implicated, Plaintiff also would have to allege that customers who tendered other means of payment (e.g. debit cards or Electronic Funds Transfer) were not charged a fee.  Because that allegation appears nowhere in the Complaint, Plaintiff's allegations "stop[] short of the line between possibility and plausibility of entitlement to relief."  *Iqbal*, 556 U.S. at 678.

### a.  The Florida Attorney General's Opinion Is Immaterial.

The Complaint references a June 12, 2007 Florida Attorney General Opinion ("Opinion") stating that section 501.0117 does not prohibit public utilities from imposing a surcharge, but it "would ... appear to prohibit private utilities from imposing a surcharge for use of credit card payments."  2007 Op. Fla. Att'y Gen. 25, 2007 WL 6891254 (2007).  However, the Opinion does nothing to salvage Plaintiff's deficient claims.  The Opinion addresses the discrete issue of how the statute applies to *utilities*.  It does not speak to the conduct of third-party payment processors, such as Speedpay, that provide technology and infrastructure to facilitate utilities' acceptance of the utilities' own payments.[7]

---

made by credit customers).  A federal court sitting in New York reached a different conclusion than Judge Hinkle concerning the constitutionality of a similar statute and determined that the statute violated the First Amendment.  *Expressions Hair Design v. Schneiderman*, 975 F. Supp. 2d 430, 436 (S.D.N.Y. 2013), *appeal docketed* 13-4537 (2d Cir. Dec. 2. 2013) (oral argument held on March 15, 2015).

[7]  Even if the Opinion were somehow relevant, it is not binding on this Court.  Agency advisory opinions issued pursuant to Florida Statute § 16.01 provide guidance to executive and administrative officers in performing their official duties, but only until those opinions are superseded by judicial decisions or opinions.  *State ex rel. Atl. Coast Line R. Co. v. State Bd. of Equalizers*, 84 Fla. 592, 605, 94 So. 681, 686 (1922).  Though agency opinions may be entitled to "great weight" when a court is construing the Florida statutes, they are not binding on the courts.  *Leadership Hous., Inc. v. Dep't of Revenue*, 336 So.2d 1239, 1241 (Fla. 4th Dist. Ct. App. 1976); *Beverly v. Div. of Beverage of the Dep't of Bus. Regulation*, 282 So.2d 657 (Fla. 1st Dist. Ct. App. 1973).  Here, the Court is bound by the paramount obligation to interpret section 501.0117 in accordance with its plain and unambiguous language.  *Brandon Chrysler Plymouth Jeep Eagle, Inc. v. Chrysler Corp.*, 898 F. Supp. 858, 861 (M.D. Fla. 1995).

The private utilities referenced in the Opinion are *sellers* of utility services to consumers. Because Speedpay does not sell electrical services, the Opinion is irrelevant to Plaintiff's claims here. This Court should reject Plaintiff's misguided attempt to conflate Speedpay, a third-party payment processor, with FPL, a private utility and seller that must abide by section 501.0117.

Plaintiff has not made any factual allegations that would permit the Court to infer that section 501.0117 applies to her payment transaction, much less that Speedpay violated that statute. As such, Counts I, II, and III – which are grounded completely on the false premise that section 501.0117 governs a third-party payment processor – should be dismissed.

**B.   The Complaint Does Not Allege Facts Supporting the Application of Section 560.204 to Speedpay's Conduct.**

Plaintiff also attempts to manufacture claims for unjust enrichment, money had and received, and FDUPTA violations, based on alleged violations of section 560.204. (Doc. 1 at ¶¶ 51-67.) Even if a private cause of action were allowed, Plaintiff's claims still should be dismissed because she does not allege conduct by that Speedpay that is covered by the statute.

**1.   The Complaint Fails to Allege Facts Supporting Plaintiff's Conclusion That Speedpay Is a "Money Transmitter."**

Section 560.204 applies only to "money transmitters" – a technical term specifically defined as a company that:

> receives currency, monetary value, or payment instruments for the purpose of transmitting the same by any means, including transmission by wire, facsimile, electronic transfer, courier, the Internet, or through bill payment services or other businesses that facilitate such transfer ....

*Id.* § 560.103(19). Here, though, Plaintiff presents no factual allegations that would allow the Court to conclude that Speedpay qualifies as a "money transmitter" under the statute. Plaintiff attempts to invoke chapter 560 by reciting the language of the statute, then making the conclusory assertion that Speedpay is a "money transmitter" operating without a license. Plaintiff does not allege that Speedpay itself ever came into possession of Plaintiff's funds instead of merely "process[ing] credit card payments [she] made." (Doc. 1, ¶ 30.) Nor does she offer any facts describing Speedpay's business generally, or any explanation of how the payment processing services provided by Speedpay to FPL converts her payment to FPL into a transaction subject to the FMTC. Plaintiff merely parrots the statutory language and asks the Court to accept her legal conclusion that Speedpay is a "money transmitter" within the meaning of the statute.

16

This is precisely the kind of "naked assertion devoid of any further factual enhancement," that the Supreme Court held was impermissible and subjects a complaint to dismissal. *Twombly*, 550 U.S. at 557.

Plaintiff's factual allegations concerning her specific Speedpay transaction are so threadbare that they cannot, as a matter of law, permit an inference that Speedpay is a "money transmitter" under section 560.103(19). The Complaint alleges that, on February 6, 2015, Plaintiff called FPL's toll-free payment number to pay her utility bill and was transferred to Speedpay's automated payment system. When Plaintiff selected the credit card payment option, she then "paid her [FPL] bill using Speedpay's telephone payment system," plus an additional $3.25 fee. (Doc. 1, ¶¶ 24-28.) The Complaint also makes a general allegation that FPL "relies upon ... Speedpay to process credit card payments made by its customers, and to transmit the money it obtains back to [FPL]." (*Id.* at ¶ 30.) These factual allegations do not plausibly allege that Speedpay is a "money transmitter" subject to licensure because the allegations are equally consistent with Speedpay acting as a payment processor that does not actually hold the funds. *Iqbal*, 556 U.S. at 678 ("The plausibility standard ... asks for more than a sheer possibility that a defendant has acted unlawfully.")

Plaintiff's claims based on sections 560.103(19) and 560.204 lack the necessary factual support for this Court to plausibly conclude that Speedpay acted as a "money transmitter" in Plaintiff's transaction. As such, Counts IV, V, and VI should be dismissed.

## C. The Complaint Pleads Facts Inconsistent with Plaintiff's Legal Claims.

Even if Plaintiff could show that either section 501.0117 or section 560.204 applied to her transaction and that Speedpay violated that statute, she still has not stated claims for unjust enrichment, money had and received, and violation of the FDUPTA. Plaintiff lists, in summary fashion, the elements for each of those causes of action; however, a careful examination of the underlying factual allegations shows that these claims cannot stand because the factual allegations that Plaintiff sets forth in her Complaint actually refute the legal claims she has alleged.

### 1. The Unjust Enrichment Claim Fails Because Plaintiff Received a Benefit from Speedpay's Service.

Florida law recognizes a claim for unjust enrichment only if: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained the benefit; and (3)

it would be inequitable for the defendant to retain the benefit without paying for it.  *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1316 (M.D. Fla. 2000) (citations omitted).  An unjust enrichment claim necessarily fails if the parties have a contract or if the defendant has given adequate consideration to the plaintiff for the benefit conferred.  *Id.* at 1316-17; *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So.2d 322, 331-32 (Fla. 5th Dist. Ct. App. 2007).

In *Baptista v. JPMorgan Chase Bank, N.A.*, the Eleventh Circuit held that an analogous claim for unjust enrichment was properly dismissed on the alternative theories of federal preemption and mutual consideration.  640 F.3d 1194 (11th Cir. 2011).  The *Baptista* plaintiff challenged a $6 fee a bank charged her for immediate processing of a check, which the plaintiff contended violated a Florida statute that prohibited settling a check for more than par value. After determining that the statute was preempted by federal law, the Eleventh Circuit held in the alternative that the unjust enrichment claim should be dismissed because the plaintiff received consideration for the fee she paid to the bank -- specifically, the right to immediate processing of the check instead of waiting the usual processing time.  *Id.* at 1198 n. 3.

Here, Plaintiff alleges that she conferred a benefit on Speedpay by paying the $3.25 fee that Speedpay charged to process her transaction.  (Doc. 1, ¶ 43.)  However, Plaintiff fails to recognize that, even assuming *arguendo* that the $3.25 convenience fee was illegal, Plaintiff received a benefit for that fee.  Specifically, Plaintiff received a benefit by the immediate processing of her payment to FPL through an electronic payments channel when she made a phone call, which made it unnecessary for Plaintiff to visit FPL to pay in person or to risk having a late payment if she had sent her payment via U.S. Mail.  (*Id.* ¶¶ 24-28.).  The Complaint is devoid of any allegations that Plaintiff objected to the fee at the time of the transaction or that the fee was imposed without notice to her.  Presumably, Plaintiff agreed to the charge because she alleges that she completed the transaction.  (*Id.* ¶¶ 27-28.)  Because the Complaint alleges a contract between the parties supported by mutual consideration, Plaintiff's claims for unjust enrichment in Counts I and IV should be dismissed.

### 2.   Money Had and Received Is Implausible Because the Complaint Alleges Consideration.

Under Florida law, a claim for money had and received requires the same showing as a claim for unjust enrichment.  *Kelly v. Palmer, Reifler, & Assocs., P.A.*, 681 F. Supp. 2d 1356, 1384 (S.D. Fla. 2010) (dismissing claim for money had and received against a law firm based on an allegedly misleading letter demanding payment for legal services because the plaintiffs had

received a substantial benefit from the legal services provided); *Moore Handley, Inc. v. Major Realty Corp.*, 340 So.2d 1238, 1239 (Fla. 4th Dist. Ct. App. 1976) (affirming the denial of a motion to dismiss because "at the very least a failure of consideration ha[d] been alleged").  A claim for money had and received also fails if there is mutual consideration or an express contract.  *Berry v. Budget Rent A Car Sys., Inc.*, 497 F. Supp. 2d 1361, 1370 (S.D. Fla. 2007)  Here, Plaintiff's Complaint essentially alleges an express contract – she paid a fee in exchange for Speedpay's services in immediately processing her payment to FPL.  As such, there can be no claim for money had and received, and Counts II and V should be dismissed.

### 3.   Plaintiff Has Not Alleged the Essential Elements of a FDUPTA Claim.

To proceed with a claim for violation of FDUPTA, a plaintiff must "allege sufficient facts to show that the consumer has been actually aggrieved by the unfair or deceptive act committed by the seller in the course of trade or commerce."  *Shibata*, 133 F. Supp. 2d at 1317.  The term, "unfair or deceptive acts," is limited to conduct that is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *Id.*

Here, Plaintiff has failed to plead the essential elements of a FDUPTA claim.  As explained above, the Florida Legislature has not classified a violation of section 501.0117 or section 560.204 as a *per se* unfair or deceptive trade practice.  *See supra*, at I(A)(2)(b).  Even if Plaintiff could establish that section 501.0117 or section 560.204 applied to Speedpay, Plaintiff was not "actually aggrieved" by a violation of either section because she received a benefit for the fee she paid -- specifically, the ability to make a payment over the telephone. *See supra*, at II(A)(2)(a).   Plus, the $3.25 fee was fully disclosed and Plaintiff agreed to pay it.  *See Halpin*, 2009 WL 1753759, at *1 ("[c]harging a fully disclosed but excessive price ordinarily is not a deceptive or unfair trade practice"); *supra* II(C)(1).  Because these allegations cannot form the basis for a valid FDUPTA cause of action, Counts III and VI should be dismissed.

### CONCLUSION

Plaintiff's Complaint should be dismissed because it fails – both legally and factually – to state any claim against the Defendant.

Respectfully submitted this the 6th day of April, 2015.

        CONCEPCION MARTINEZ & PUENTE

        /s/ Carlos F. Concepción
        Carlos F. Concepción
        Florida Bar No. 386730
        Ricardo H. Puente
        Florida Bar No. 121533
        255 Aragon Avenue, 2nd Floor
        Coral Gables, FL 33134
        (305) 444-6669
        (305) 444-3665 (facsimile)
        CConcepcion@cfclaw.com

        KILPATRICK TOWNSEND & STOCKTON LLP

        /s/ Daniel R. Taylor, Jr.
        Daniel R. Taylor, Jr.
        N.C. State Bar No. 7358
        Susan H. Boyles
        N.C. State Bar No. 20877
        Joseph S. Dowdy
        N.C. State Bar No. 31941
        Kilpatrick Townsend & Stockton LLP
        1001 West Fourth Street
        Winston-Salem, North Carolina 27101
        Telephone:  (336) 607-7300

        *Counsel for Defendant Speedpay, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

  I hereby certify that a true and correct copy of the above foregoing was electronically filed with the Clerk of Court using CM/ECF on this 6th day of April, 2015, and that all counsel of record identified on the attached Service List received notice via transmission of a Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive a Notice of Electronic Filing.

        CONCEPCION MARTINEZ & PUENTE

        /s/ Carlos F. Concepción
        Carlos F. Concepción
        Florida Bar No. 386730
        Ricardo H. Puente
        Florida Bar No. 121533
        255 Aragon Avenue, 2nd Floor
        Coral Gables, FL 33134
        (305) 444-6669
        (305) 444-3665 (facsimile)
        CConcepcion@cfclaw.com
        Rpuente@cfclaw.com
        *Attorneys for Defendant*

## <u>SERVICE LIST</u>

CARYN PINCUS v. SPEEDPAY, INC.
CASE NO. 15-CV-80164


SCOTT D. OWENS, Esq.
3800 S. Ocean Dr., Suite 235
Hollywood, FL 33019
Telephone: (954) 589-0588
Facsimile: (954) 337-0666
scott@scottdowens.com

BRET L. LUSSKIN, Esq.
20803 Biscayne Blvd., Suite # 302
Aventura, FL 33180
Telephone: (954) 454-5841
Facsimile: (954) 454-5844
blusskin@lusskinlaw.com