UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-80164-CIV-MARRA

CARYN PINCUS, an individual, on behalf
of herself and all others similarly situated,

      Plaintiff,
vs.

SPEEDPAY, INC., a New York corporation,

      Defendant.
_____/

**OPINION AND ORDER**

      This cause is before the Court upon Defendant Speedpay, Inc.'s Motion to Dismiss (DE 21). The Motion is fully briefed and ripe for review. The Court has carefully considered the Motion and is otherwise fully advised in the premises.

      I.  Background

      On April 23, 2015, Plaintiff Caryn Pincus ("Plaintiff" "Pincus") filed this First Amended Class Action Complaint ("FAC") against Defendant Speedpay, Inc. ("Defendant") pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Plaintiff brings the following claims against Defendant: unjust enrichment for a violation of Florida Statute § 501.0117 (count one); money had and received for a violation of Florida Statute § 501.0117 (count two); Florida Deceptive and Unfair Trade Practice Act ("FDUTPA") for a violation of Florida Statute §501.0117 (count three); unjust enrichment for a violation of Florida Statute § 560.204 (count four); money had and received for a violation of Florida Statute § 560.204 (count five); FDUTPA for a violation of Florida Statute 560.204 (count six); Florida civil remedies for Criminal Procedures Act ("CRCPA"), Florida Statute § 772.104 (count seven) and Racketeer Influenced

and Corrupt Organizations ("RICO"), 18 U.S.C. § 1961 et seq. (count eight).

According to the allegations of the FAC, Defendant is a funds transmission service and bill payment processing company that provides electronic bill payment processing services for several industries, including utility companies such as Florida Power & Light Company ("FP&L"). (FAC ¶ 6.)  Plaintiff lives in Palm Beach County, Florida with electric utility services supplied by FP&L. (FAC ¶ 27.)  FP&L is an electric utility company that provides electricity to over 4.5 million Florida customers. (FAC ¶ 40.)

On November 9, 2014, Plaintiff's husband paid the family's monthly electric bill by calling FP&L automated "pay by phone" telephone number. (FAC ¶ 30.)  During the telephone call, FP&L gave Mr. Pincus the option of making a payment via credit card. (FAC ¶ 31.)  When he selected the credit card option, Mr. Pincus was transferred automatically to Defendant's automated telephone system. (FAC ¶ 32.)  Using his personal credit card, Mr. Pincus paid the electric bill using Defendant's telephone system. (FAC ¶ 33.)  Defendant imposed on Mr. Pincus an additional surcharge of $3.25 for the privilege of making the payment using a credit card. (FAC ¶ 34.)

On February 6, 2015, Mrs. Pincus paid the household's monthly electric bill by calling FP&L automated "pay by phone" telephone number.  (FAC ¶ 35.)  During that call, FP&L gave Mrs. Pincus the option of making a payment via a credit card. (FAC ¶ 36.)  Mrs. Pincus selected the credit card payment option and was transferred to Defendant's automated telephone payment system. (FAC ¶ 37.)  Using her personal credit card, she paid the FP&L bill using Defendant's telephone payment system. (FAC ¶ 38.)  At the time of payment, Defendant imposed on her an additional surcharge of $3.25. (FAC ¶ 39.)

FP&L relies upon Defendant to process and accept credit card payments made by its customers and to transmit the money it obtains back to FP&L. (FAC ¶ 41.)  Defendant imposes a surcharge on customers of FP&L for the privilege of making a payment using a credit card, which is $3.25 for residential customer and  $14.95 for commercial customers. (FAC ¶ 42.)  FP&L requires customers who elect to pay with a credit card to do so through Defendant. (FAC ¶ 43.)  Customers who opt to pay their bill by other means, such as cash, check or electronic withdrawal, are not directed to Defendant and are not subjected to the surcharge. (FAC ¶ 44.)

Defendant moves to dismiss on the following bases: Plaintiff's claims for unjust enrichment, money had and received and FDUTPA are based on violations of Florida Statutes §§ 501.0117 and 560.204, which do not provide for a private right of action.  Alternatively, Plaintiff has failed to allege that Defendant is a "seller or lessor" as required by Florida Statutes § 501.0117 and has failed to provide facts that Defendant is a "money transmitter" pursuant to Florida Statute § 560.204.  Additionally, Defendant argues that Plaintiff fails to allege facts in support of counts one through four because she received the benefit of being able to pay her bill immediately with a credit card for the convenience fee she paid.  Defendant also argues that the RICO claims do not demonstrate that Defendant is in the "money transmitting business" for the purpose of establishing criminal activity under RICO.  Lastly, Defendant contends that Florida Statute § 560.204 is not among the criminal statute enumerated in the Florida Civil Remedies for Criminal Practices Act that create civil liability.

Plaintiff responds that she is not seeking to bring a private right of action under Florida Statutes §§ 501.0117 and 560.204.  Instead, Plaintiff seeks to bring claims for unjust enrichment and money had and received for credit card surcharges Defendant collected in violation of

Florida Statutes §§ 501.0117 and 560.204.  In making that argument, Plaintiff contends that Defendant operates as an unlicensed money transmitter in violation of Florida Statutes § 560.204 and its collection of credit card surcharges were imposed in violation of Florida Statutes § 501.0117.  Plaintiff also contends that it properly plead the elements of unjust enrichment and money had and received.  Further, Plaintiff argues that the fact that Defendant is not a "seller or lessor" is irrelevant to Plaintiff's claims.  Next, Plaintiff claims the FDUTPA claim survives because she pled that Defendant is a "money transmitter" engaged in deceptive and unfair trade practices.   Lastly, Plaintiff states she alleged violations of a predicate offense under RICO.

 II.  Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Thus, "only a complaint that states a

plausible claim for relief survives a motion to dismiss." Id. at 1950.  When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

III. Discussion

A.  Counts one through six

Plaintiff's claims for unjust enrichment, money had and received and FDUTPA are based on alleged violations of Florida Statutes §§ 501.0117[1] and 560.204.[2]  The parties do not dispute

---

[1] Florida Statute § 501.0117 provides in part:

1) A seller or lessor in a sales or lease transaction may not impose a surcharge on the buyer or lessee for electing to use a credit card in lieu of payment by cash, check, or similar means, if the seller or lessor accepts payment by credit card. A surcharge is any additional amount imposed at the time of a sale or lease transaction by the seller or lessor that increases the charge to the buyer or lessee for the privilege of using a credit card to make payment. . . .

(2) A person who violates the provisions of subsection (1) is guilty of a misdemeanor of the second degree . . .

Florida Statute § 501.0117.

[2] Florida Statute § 560.204(1) provides:

Unless exempted, a person may not engage in, or in any manner advertise that they engage in, the selling or issuing of payment instruments or in the activity of a money transmitter, for compensation, without first obtaining a license under this part. For purposes of this section, "compensation" includes profit or loss on the exchange of currency.

Florida Statute § 560.204(1).

Florida Statute § 560.103(23) provides:

"Money transmitter" means a corporation, limited liability company, limited liability

5

that neither statute provides Plaintiff a private right of action. The question before the Court, however, is whether Plaintiff can seek relief for harm allegedly caused by acts violative of these statutes under recognized common law and statutory vehicles for redress, despite the absence of a legislatively created right of action within the statutes themselves. The Court answers that question in the affirmative.

In State Farm Fire & Casualty Co. v. Silver Star Health and Rehab., 739 F.3d 579 (11th Cir. 2013), the plaintiff asserted a claim for unjust enrichment to recover sums paid to a medical services provider that turned out to be unlicensed. Id. at 581. The relevant Florida law stated that "[a]ll charges or reimbursement claims made by or on behalf of a clinic that is required to be licensed under this part, but that is not so licensed, or that is otherwise operating in violation of this part, are unlawful charges, and therefore are noncompensable and unenforceable." Id. at 583 (citing Florida Statute § 400.9935(3)). The Eleventh Circuit held, with respect to the unjust enrichment claim, that Florida courts have allowed a cause of action "to prevent wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity." Id. at 584. The Court went on to say, "[i]f an entity accepts and retains benefits that it is not legally entitled to receive in the first

---

partnership, or foreign entity qualified to do business in this state which receives currency, monetary value, or payment instruments for the purpose of transmitting the same by any means, including transmission by wire, facsimile, electronic transfer, courier, the Internet, or through bill payment services or other businesses that facilitate such transfer within this country, or to or from this country.

Florida Statute § 560.103(23).

place, Florida law provides for a claim of unjust enrichment." Id.

Here, the FAC alleges that Defendant operated without a required license in violation of Florida Statute § 560.204 and violated Florida Statute § 501.0117 by imposing a surcharge on Plaintiff for electing to use a credit card in lieu of another form of payment. Thus, pursuant to Silver Star, Florida law permits a claim for unjust enrichment. See also Vista Designs, Inc. v. Silverman, 774 So. 2d 884, 887 (Fla. Dist. Ct. App. 2001) (permitting an attorney's client to recover fees paid to the attorney who was not admitted to practice in Florida based on regulatory measures which made it a criminal offense to practice law without a license); Fabricant v. Sears Roebuck, 202 F.R.D. 310, 320 (S.D. Fla. 2001) (in considering whether a plaintiff could obtain restitution of premiums paid on an insurance contract that was illegal in Florida, the court stated "Florida law is well-settled that where the law requires licenses to conduct business, the contracts by the unlicensed to perform licensed services are illegal and void").

In contrast, Defendant relies upon Buell v. Direct General Ins. Agency, Inc., 267 F. App'x 907 (11th Cir. 2008). In Buell, the plaintiff brought a putative class action against an insurer for alleged violations of the Florida Unfair Insurance Trade Practices Act ("FUITPA") which prohibited "sliding" with respect to the sale of certain ancillary insurance products. Id. at 908. Like here, the plaintiff acknowledged that a private right of action was not created under the applicable statute, but nevertheless sought relief under common law claims, including money had and received. Id. at 909. The Eleventh Circuit agreed with the district court which found "plaintiffs may not evade the Florida legislature's decision to withhold a statutory cause of action for violations of the pertinent provisions of FUITPA by asserting common law claims based on such violations." Id. (citing Murthy v. Sinha Corp., 644 So. 2d 983, 985 (Fla. 1994) (courts must

7

look to whether the statute intended to create a private remedy)).

This Court chooses to follow the rationale of the published decision in Silver Star over that of the unpublished Buell opinion.  The Buell opinion distinguished Davis v. Travelers Indemnity Co. of Am., 800 F.2d 1050 (11th Cir. 1986), which held that common law remedies may be appropriate for violations of the FUITPA.  The court in Buell relied on a post-Davis decision of the Florida Supreme Court, Murthy v. Sinha Corp., 644 So. 2d 983, 985 (Fla. 1994), and stated that the principle of Florida law relied upon by the Davis court had been repudiated.  Thus, Davis was no longer binding authority, and under the holding of Murthy, legislative intent is paramount in determining whether a remedy for a statutory violation is actionable.

The Buell Court, however, overlooked the fact that while the Florida Supreme Court in Murthy ruled that the statute in question did not create a cause of action, it also stated that "[w]e agree that an owner may recover from a negligent qualifying agent, but only under a common law theory of negligence."  Murthy, 644 So. 2d at 986-87.  Hence, Murthy did not preclude other available civil causes of action that might already exist. Murthy simply stated that the statute did not create the remedy.

Thus, while Buell does support Defendant's position, this Court concludes that it is inconsistent with Silver Star, a binding published opinion, and inconsistent with the Florida Supreme Court's decision in Murthy upon which Buell relied.[3]  As a result, this Court concludes

---

[3] The Court also rejects Defendant's reliance on Fuller v. Mortg. Elec. Registration Sys. Inc., 888 F. Supp. 2d 1257 (M.D. Fla. 2012); Carrero v. LVNV Funding, LLC,, No. 11-62439-CIV, 2014 WL 6433214 (S.D. Fla. 2014) and Halpin v. David, No. 4:06cv457-RH/WCS, 2009 WL 1753759 (N.D. Fla. 2009).  In Fuller, the court relied upon the Buell decision, which this Court has rejected as persuasive authority.  Fuller, 888 F. Supp. 2d at 1270-71.  In Carrero, the court rejected claims of restitution or unjust enrichment for two reasons: (1) the claim was based on the defendant's failure to obtain a license to collect a debt in violation of Florida law, but the

that even though the statutes in question do not create private rights of action, Plaintiff may proceed with common law or other statutory causes of action that exist if the elements of those claims are properly stated.

Next, the Court will consider Defendant's remaining argument that Plaintiff's factual allegations are inconsistent with her legal claims.  A claim for unjust enrichment requires that: "1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value." Media Svcs. Group, Inc. v. Bay Cities Comms., Inc., 237 F.3d 1326, 1330-31 (11th Cir. 2001) (citing  Swindell v. Crowson, 712 So. 2d 1162, 1163 (Fla. Dist. Ct. App. 1998); Greenfield v. Manor Care, Inc., 705 So. 2d 926, 930 (Fla. Dist. Ct. App. 1997); Turner v. Fitzsimmons, 673 So. 2d 532, 536 (Fla. Dist. Ct. App. 1996)).

Defendant challenges the last element of this claim.  Specifically, Defendant asserts that Plaintiff received a benefit in exchange for the fee charged for using her credit card. In making this argument, Defendant relies upon Baptista v. JP Morgan Chase Bank, N.A., 640 F.3d 1194 (11th Cir. 2011).  In Baptista, the plaintiff challenged a $6 fee a bank imposed for the immediate processing of a check in violation of Florida Statute § 655.85, which the Court found was

---

plaintiff did not allege that the defendant "failed to reduce her debt in an amount equal to her payments" and (2) the plaintiff had an adequate remedy at law. Carrero, 2014 WL 6433214 at *5. Here, Plaintiff has alleged that Defendant wrongfully collected money from her, and if Defendant's position was to carry the day, Plaintiff would have no other legal remedy.  In Halpin, although the court made a passing reference that it was not clear that a violation of the statute at issue created a private right of action for damages or would constitute a deceptive or unfair trade practice, the court stated that those questions need not be addressed.  Halpin, 2009 WL 1753759 at *1.  Thus, the Halpin court did not reach any conclusion on the issue presented and is not persuasive authority.

preempted by the National Banking Act. Id. at 1198. In a footnote, the Baptista court stated:

> Here, Baptista requested to have the check cashed immediately upon presentment to Chase, and in return, Chase requested a $6.00 fee. Baptista agreed to the fee. If Baptista had chosen to deposit the check in her own account and wait for processing, no fee would have been levied. The fee was only levied because Chase conferred an additional benefit on Baptista, that is, immediate payment of the check. Because Baptista cannot show that Chase failed to give consideration for her $6.00, her claim for unjust enrichment fails as a matter of law.

Id. at 1198 n.3.

Regardless of whether this footnote is anything more than dicta, Silver Star supra held that receiving benefits in violation of a Florida statute supports a cause of action for unjust enrichment. See also State Farm Mut. Auto Ins. Co. v. Physicians Group of Sarasota, LLC, 9 F. Supp. 3d 1303 (M.D. Fla. 2014) ("Unlawfully rendered services . . . cannot qualify as adequate consideration").  The same analysis applies for the claim for money had and received. Stock Fraud Prevention, Inc. v. Stock News Info, LLC, No. 11–80764–CIV, 2012  WL 664381, at * 10 (S.D. Fla. Feb. 28, 2012).

With respect to the FDUTPA claim, the Court rejects Defendant's contention that Plaintiff has not alleged the necessary elements. Courts have regarded FDUTPA as "extremely broad" and the statute is designed to protect the consuming public from those who engage in deceptive or unfair trade practices. See Day v. Le-Jo Enterprises, Inc., 521 So. 2d 175, 178 (Fla. Dist. Ct. App. 1988).

Lastly, the Court finds that Defendant's argument that Florida Statute § 501.0117 does not apply because Defendant is not a seller or lessor is not well-taken.   While Plaintiff concedes that Defendant is not a seller or lessor, Plaintiff correctly notes that the fact that Defendant did not actually sell her the electricity is not germane.  Unjust enrichment claims may be pursued

against an intermediary.  See, e.g., Aceto Corp. v. TherapeuticsMD, Inc., 953 F. Supp. 2d 1269, 1288-89 (S.D. Fla. 2013); Romano v. Motorola, Inc., No. 07-CIV-60517, 2007 WL 4199781, at * 2 (S.D. Fla. Nov. 26, 2007).

For these reasons, the Court denies the motion to dismiss counts one through six.[4]

B.  Counts seven and eight

With respect to the claims brought pursuant to CRCPA and RICO, Plaintiff contends the state claim is predicated upon 18 U.S.C. § 1961(1)(B) and the federal claim is based upon a predicate offense for section 1961(1)(B), namely a violation of section 1960.

Section 1960 of Title 18 reads, in part,:

(a) Whoever knowingly conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business, shall be fined in accordance with this title or imprisoned not more than 5 years, or both.

(b) As used in this section–

(1) the term "unlicensed money transmitting business" means a money transmitting business which affects interstate or foreign commerce in any manner or degree and–

> (A) is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable;
>
> (B) fails to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations prescribed under such section; or
> . . . .
>
> (2) the term "money transmitting" includes transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier; and

---

[4] With respect to Defendant's argument regarding its status a money transmitter versus a payment processor, the Court addresses this in section B.

18 U.S.C. § 1960.

Defendant asserts that the Complaint fails to allege properly that it is a "money transmitting business" and instead is consistent with it being a "payment processor," which is excluded from the definition of a "money transmitting business." Defendant claims the allegations support a finding, under a ruling by the Financial Crime Enforcement Network of the Department of the Treasury, that Defendant meets the requirements of the "payment processor" exception.[5]  FinCen Ruling FIN-2014-R012 (Oct. 27, 2013).[6]

Specifically, Defendant notes that the FAC alleges that (1) Defendant facilitated payment of Plaintiff's credit card bill using Defendant's telephone system; (2) the payment system uses a credit card; (3) FP&L requires that all customers who pay with a credit card go through Defendant's system and (4) FP&L provided Plaintiff's electrical service and Plaintiff paid the bill through Defendant's service.  (Mot. at 16-17.)  According to Defendant, these facts give rise to the "payment processor" exception.

The Court cannot make this determination on a motion to dismiss.  Such an inquiry is fact intensive and requires a fully developed record.  Indeed, the regulations state that a "money

---

[5] FinCEN stipulates four conditions for the payment processor exemption to apply to a particular business pattern: (1) the entity providing the service must facilitate the purchase of goods or services, or the payment of bills for goods or services (other than money transmission itself); (2) the entity must operate through clearance and settlement systems that admit only BSA-regulated financial institutions; (3) the entity must provide the service pursuant to a formal agreement; and (4) the entity's agreement must be at a minimum with the seller or creditor that provided the goods or services and receives the funds. FinCen Ruling FIN-2014-R012 (Oct. 27, 2013).

[6] http://www.fincen.gov/news_room/rp/rulings/html/FIN-2014-R012.html (last visited Aug. 4, 2015).

transmitter" may turn on "facts and circumstances." 31 C.F.R. 1010.100(ff)(5)(ii)(B).

For this reason, the Court denies the motion to dismiss counts seven and eight. [7]

IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant Speedpay, Inc.'s Motion to Dismiss (DE 21) is **DENIED.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 6th day of October, 2015.

_____
KENNETH A. MARRA
United States District Judge

---

[7] The elements for a RICO cause of action under federal and Florida law are the same. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1263 (11th Cir. 2004).