**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 15-80164-CIV-MARRA**

| | |
|---|---|
| CARYN PINCUS, an individual, on behalf of herself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| SPEEDPAY, INC., a New York corporation, | ) ) ) |
| Defendant. | ) ) |

**ORAL ARGUMENT REQUESTED**

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT**

**Introduction**

On two occasions, Plaintiff Caryn Pincus used Defendant Speedpay, Inc.'s "pay by phone" service to pay her electric bill. Plaintiff has admitted that the $3.25 fee for this service was fully disclosed before she completed each transaction; she has also admitted that her bills were, in fact, paid. Nevertheless, Plaintiff claims that she and other class members throughout Florida are entitled to refunds because Speedpay acted as an unlicensed "money transmitter" when it facilitated their payments.

As explained below, however, Speedpay is not a "money transmitter" and therefore did not need a money transmission license. Instead, Speedpay served as a "payment processor" on behalf of Plaintiff's electric company, Florida Power & Light Company. These are entirely different types of transactions. This is so for five reasons, any one of which requires the entry of judgment in favor of Speedpay:

- First, Florida Power & Light's "merchant acquiring bank" received money for Plaintiff's payments directly from Plaintiff's bank. At that point, Plaintiff's bill had been paid, even though, as explained in more detail below, additional steps in the settlement process came later.

- Second, Speedpay acted as the agent of Plaintiff's creditor (Florida Power & Light) when processing Plaintiff's payment, such that, as Plaintiff admitted, her bill was considered "paid" by the time she finished her phone call with Speedpay. In other words, Speedpay acted like the electric company's "accounts receivable" department, not a money transmitter.

- Third, and relatedly, Speedpay falls within the "payment processor exemption" to the definition of money transmission. This exemption provides that a person who merely facilitates the payment of a bill is not a money transmitter. To the extent Speedpay or an affiliate ever touched Plaintiff's money, it did so as part of the payment processing service Speedpay performs on behalf of its clients (in this case, the electric company)—not as a money transmitter acting on behalf of a consumer (in this case, Ms. Pincus).

- Fourth, as the term implies, "money transmission" involves a two-step process: (1) receiving money from a person and then (2) transmitting that money to someone else. That is not the service Speedpay provides. In fact, Plaintiff's bill was paid *before* any money was sent to Speedpay or any of its affiliates. Because a person cannot "transmit" money it does not yet have, Speedpay could not have received Plaintiff's money "for the purpose of transmitting the same," as Florida law requires. *See* Fla. Stat. § 560.103(23).

- Fifth, Speedpay did not actually receive money from Plaintiff. Instead, as part of the payment processing settlement process, Florida Power & Light's merchant acquiring bank

2

sent money to a Speedpay affiliate, Western Union Financial Services, Inc. ("Western Union"), an entity that has a money transmitter license.

**<u>Undisputed Facts</u>**

Speedpay provides bill payment processing services to Florida Power & Light and other clients to enable them to receive payments from their customers. *See* Statement of Undisputed Material Facts ("Undisputed Facts") ¶ 1. Florida Power & Light customers can pay their electric bills in a variety of ways, ranging from the traditional method of mailing a check to the more recent option of calling a toll-free number and using a credit card. *Id.* ¶ 2. Speedpay provides the technology and infrastructure that enables Florida Power & Light to accept payments from customers who choose the latter service. *Id.* ¶ 3.

Plaintiff Caryn Pincus and her husband usually pay their electric bills via a third, cost-free method: authorizing Florida Power & Light to take money directly from their checking account. *Id.* ¶ 4. On two occasions, however, Plaintiff and her husband were short on cash and chose to pay their bill with a credit card using Speedpay's "pay by phone" system. *Id.* ¶ 5. Plaintiff also chose to pay her bills this way to avoid incurring late fees. *Id*. ¶ 6. Plaintiff has admitted that she chose to proceed with the transactions after being told that she would incur a convenience fee of $3.25. *Id.* ¶ 7. Plaintiff also admits that in exchange for the convenience fee, Speedpay correctly processed her transactions and her bills were, in fact, paid. *Id.* ¶ 8.

When Plaintiff called the "pay by phone" number, she provided her credit card information and indicated how much she wanted to pay. *Id*. at ¶ 9. Her payments were then processed through the following automated steps:[1]

---

[1] The following describes how Plaintiff's payments to Florida Power & Light were processed. It is not necessarily the way other customers' payments to other Speedpay clients are processed.

- First, Speedpay confirmed that the payment Plaintiff wanted to make was consistent with Florida Power & Light's requirements, such as the permissible per-payment range for customers paying by phone. *Id.* ¶ 9(a).

- Second, Speedpay gave Plaintiff's payment information to Florida Power & Light's "merchant acquiring bank"—a bank that helps merchants settle credit and debit card transactions—and asked the bank to confirm that Plaintiff had enough money on her credit limit to cover the transaction. *Id.* ¶ 9(b).

- Third, Plaintiff's bank placed a "hold" on Plaintiff's credit line for the amount of her requested payment. At this point in the process, Plaintiff was still on the phone, the first three steps having taken place in a matter of seconds. *Id.* ¶ 9(c).

- Fourth, within minutes of Plaintiff hanging up the phone, Speedpay notified Florida Power & Light that Plaintiff had paid her bill. *Id.* ¶ 9(d).

- Fifth, Florida Power & Light's merchant acquiring bank collected money from Plaintiff's bank. *Id.* ¶ 9(e).

- Separately, as a service to its client (Florida Power & Light), Speedpay caused funds in the amount of Plaintiff's electric bill to be "pre-funded" to Florida Power & Light. Speedpay directed that money in an account belonging to Speedpay's affiliate, Western Union, be transferred to an account belonging to Florida Power & Light. One to two days later, Florida Power & Light's merchant acquiring bank caused funds in that same amount, plus the $3.25 convenience fee, to be deposited into a Western Union account. *Id.* ¶ 9(f).

As these steps show, Florida Power & Light's merchant acquiring bank received money directly from Plaintiff's bank; Speedpay was not in the middle of that transaction. Moreover, Plaintiff's debt to Florida Power & Light was "pre-funded"—funds in the amount of Plaintiff's

electric bill were sent to Florida Power & Light's operating bank account before Florida Power & Light's merchant acquiring bank reimbursed a Speedpay affiliate. *Id.* ¶ 11. From Plaintiff's perspective, when she used Speedpay's "pay by phone" service, she was dealing with Florida Power & Light, not Speedpay; she considered her bill "paid" by the time she ended the call. *Id.* ¶¶ 12-13.

**Procedural History**

The remaining claims in the Second Amended Complaint seek recovery under theories of unjust enrichment, "money had and received," violation of Florida's Deceptive and Unfair Trade Practice Act, and violation of the federal RICO statute and its Florida equivalent.[2] *See* Doc. 48 (Counts IV-VIII). Each count is based on the allegation that Speedpay is an unlicensed money transmitter. *Id.* ¶¶ 72, 76, 78, 82 & 87. With respect to her claims under the federal RICO statute and its Florida equivalent, Plaintiff alleges that Speedpay was required to register as a money transmitting business under federal law. *Id.* ¶¶ 82 & 87.

Speedpay moved to dismiss Plaintiff's claims primarily on the grounds that there was no private cause of action under the money transmitter statute. This Court denied that motion and a motion for reconsideration. Doc. 35 at 11-13; Doc. 68 at 4. While Speedpay is preserving that argument for any possible appeal, it is not advancing that argument in this motion. This motion

---

[2] The Second Amended Complaint also asserted claims for violations of a Florida law that prohibits the imposition of a surcharge for using a credit card. After the Eleventh Circuit ruled that statute unconstitutional in *Dana's Railroad Supply v. Attorney General*, 807 F.3d 1235 (11th Cir. 2015), this Court dismissed those claims (Counts I, II, and III). *See* Doc. 68. The Supreme Court recently granted *certiorari* to consider the surcharge issue in a different case, *Expressions Hair Design v. Schneiderman*, No. 15-1391, 2016 WL 2855230 (U.S. Sept. 29, 2016).

involves the separate question of whether Speedpay acted as a money transmitter in the first place—an issue that the record now enables this Court to decide.[3]

**Argument**

**I.      Standard for summary judgment.**

Summary judgment is warranted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To resist a properly supported summary judgment motion, the non-moving party cannot rely on some "metaphysical doubt" about whether summary judgment is appropriate, but instead must "come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (emphasis in original).

Denial of summary judgment is appropriate "only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Logan v. Smith*, 439 F. App'x 798, 800 (11th Cir. 2011). The facts must be viewed in favor of the non-moving party, but this requirement "extends only to 'genuine' disputes over material facts." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009). "A mere scintilla of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment. Furthermore, summary judgment is appropriate even if *some* alleged factual dispute between the parties remains, so long as there is no *genuine* issue of *material* fact." *Id.* (emphasis in original) (internal citations and quotation marks omitted).

---

[3] Plaintiff's claims under RICO and its state law equivalent fail for the additional reasons set forth in Speedpay's pending Motion for Judgment on the Pleadings as to Counts VII and VIII. Doc. 69.

II.     **Speedpay is not a "money transmitter."**

Speedpay is entitled to summary judgment on all remaining claims because it is not a "money transmitter" under either Florida or federal law. Under Florida law, a money transmitter is a corporation that "receives currency, monetary value, or payment instruments for the purpose of transmitting the same by any means." Fla. Stat. § 560.103(23). Similarly, under federal law, Plaintiff must show that Speedpay operated an unlicensed money transmitting business, which is defined as a money transmitting business that operates without an appropriate money transmitter license under state law or that fails to comply with federal registration requirements for businesses that "accept[] currency or funds…and transmit[] the currency or funds." 31 U.S.C. § 5330(d)(1)-(2); 18 U.S.C. § 1960(a).

A.     **Speedpay is not a money transmitter because Plaintiff's payment flowed from Plaintiff's bank directly to Florida Power & Light's merchant acquiring bank.**

After Plaintiff made her payment by phone, Florida Power & Light's merchant acquiring bank received that payment from Plaintiff's bank. *See* Undisputed Facts ¶ 9(e). At that point, Plaintiff's bill had been paid, and Speedpay had not touched any of Plaintiff's money, much less "transmitted" it to someone else. For this reason alone, Speedpay is entitled to summary judgment.

B.     **Speedpay is not a money transmitter because it acted as Florida Power & Light's agent in processing Plaintiff's payment.**

Even if Speedpay had initially received Plaintiff's funds, it would still not qualify as a money transmitter because it acted as Florida Power & Light's agent, such that Plaintiff's bill was "paid" by the time she hung up the phone. Florida Power & Light's contract with Speedpay confirms that Florida Power & Light may "receive customer payments" through Speedpay's service, with Speedpay being obliged to "process" those payments. *Id.* ¶ 15.

Because Speedpay acted as Florida Power & Light's agent, Plaintiff's obligation to Florida Power & Light was satisfied when Speedpay processed her payments. *See Matter of Mickler*, 50 B.R. 818, 287 (Bankr. M.D. Fla. 1985) ("[I]f an agency relationship is established, a payment to the agent is deemed to be a payment to the principal") (citing *First Nat'l Bank v. Landress*, 150 So. 589 (Fla. 1933)). Plaintiff herself believed her bills were paid as soon as she provided her payment information; as far as Plaintiff was concerned, she was dealing directly with Florida Power & Light. Undisputed Facts ¶¶ 12-13. Plaintiff did not even realize Speedpay was involved until later. *Id*. ¶ 12. In other words, this was a two-party transaction between Plaintiff on the one hand and Florida Power & Light on the other, with Speedpay processing the payment on behalf of Florida Power & Light. *Id.* ¶ 15. A money transmitter relationship, in contrast, contemplates a three-party transaction between a payor who provides the money, an intermediary who accepts the money on behalf of the payor, and a payee to whom the intermediary transmits the same money pursuant to the directions of the payor. *Id* ¶ 16.[4]

Florida's money transmitter law confirms that a payment processor like Speedpay does not need a money transmitter license. The purpose of the law is to protect consumers from losing money they provide to a money transmitter. *See* Florida Staff Analysis, Senate Bill 2158, Apr. 8, 2008 ("Senate Bill Analysis") at 8 (regulation of money transmitters is meant to "address safety and soundness concerns regarding personal assets" and to "provide greater consumer protection"), *available at* http://archive.flsenate.gov/data/session/2008/Senate/bills/analysis/pdf/2008s2158.ga.pdf; *see also* Fla. Stat. § 560.209(1) (requiring money transmitters to maintain a positive net worth and

---

[4] Speedpay's affiliate, Western Union, provides this sort of service and is licensed as a money transmitter. Undisputed Facts ¶ 10. Speedpay offers its clients a different model—the payment processing model.

obtain a surety bond); Fla. Stat. § 560.210(1) (requiring money transmitters to hold conservative investments in an amount equal to the amount of all outstanding money received for transmission in the United States). In this case, however, because Plaintiff's obligation to Florida Power & Light was satisfied by the time she hung up the phone, she did not face any risks associated with money transmission.

### C.    Speedpay is a payment processor, not a money transmitter.

Speedpay also qualifies for the "payment processor" exemption to money transmitter licensing requirements. The exemption is express under federal law, *see* 31 C.F.R. § 1010.100(ff)(5)(ii)(B), and implicit under Florida law, which is patterned after federal law, *see* Fla. Stat. § 560.103(23) (describing money transmission and "bill payment services" separately); *see also* Senate Bill Analysis at 7.

As explained above, Speedpay acted on behalf of Florida Power & Light to facilitate Plaintiff's payment of her electric bills. Florida Power & Light was told within minutes of Plaintiff completing her transaction that she had paid her bill. *Id.* ¶ 9(d). Plaintiff's transactions also meet the formal requirements for the federal payment processor exemption: (1) Speedpay facilitated the payment of Plaintiff's electric bill, (2) Speedpay operated through the Automated Clearing House system, or "ACH," a well-recognized network for facilitating financial transactions through a clearance and settlement system,[5] and (3) Speedpay provided this bill payment service pursuant to a formal agreement with the payee, Florida Power & Light. *See* Undisputed Facts ¶ 14; *see also* Dep't of Treasury, FIN-2014-R009, Application of Money

---

[5] Credit card payments likewise use a recognized clearance and settlement system. *See*, *e.g.*, *United States v. Visa U.S.A., Inc.*, 344 F.3d 229, 239 (2d Cir. 2003) (noting that the four major credit cards, including MasterCard, Visa, Amex, and Discover, "provide the infrastructure and mechanisms through which general purpose card transactions are conducting, including the authorization, settlement, and clearance of transactions").

Services Business Regulations to a Company Acting as an Independent Sales Organization and Payment Processor (Aug. 27, 2014), *available at* http://www.fincen.gov/news_room/rp/rulings/pdf/FIN-2014-R009.pdf. Other entities providing similar services have been found to meet the requirements of the federal payment processor exemption. *See, e.g.*, Dep't of Treasury, FinCEN-2012-A010 (Oct. 22, 2012), *available at* http://www.fincen.gov/statutes_regs/guidance/html/FIN-2012-A010.html (stating that payment processors typically contract with merchants to facilitate payments by the merchants' customers, including through credit card payments). Because Speedpay acted as a payment processor on behalf of Florida Power & Light, not a money transmitter, it was not required to obtain a money transmitter's license under federal or state law.

### D. Speedpay did not receive Plaintiff's money for "the purpose of transmitting the same."

By its nature, money transmission involves a two-step process between three parties: an **intermediary** receiving money from a person (**the payor**), and then transmitting that money to someone else (**the payee**) on the payor's behalf. *See* Fla. Stat. § 560.103(23) (money must be received "for the purpose of transmitting the same"). But Florida Power & Light was "pre-funded" for Plaintiff's transactions, meaning money was sent to it for Plaintiff's account (and credited to her account) *before* any money was deposited in the account of Speedpay's affiliate, Western Union. Undisputed Facts ¶ 11. Plaintiff's money thus could not have been "transmitted" to Florida Power & Light because neither Speedpay nor its affiliate had received any money by the time Florida Power & Light received payment for Plaintiff's electric bill. *Id.* ¶ 9(f).

### E. Speedpay did not "receive" or "accept" money from Plaintiff.

Finally, Speedpay did not "receive currency, monetary value, or payment instruments" from Plaintiff, as the Florida definition of money transmission requires. To "receive" something

10

is to come into possession of it or obtain it from an outside source. *See* Black's Law Dictionary 1460 (10th ed. 2014). But Speedpay did not take possession of Plaintiff's money. Rather, money from Florida Power & Light's merchant acquiring bank in the amount of Plaintiff's payment (plus the $3.25 service fee) was deposited into a Western Union account. Undisputed Facts ¶ 9(f). For the same reason, Speedpay did not "accept" Plaintiff's money under the federal definition of a money transmitting business. *See* 31 U.S.C. § 5330(d)(1)-(2).

## <u>Conclusion</u>

All of Plaintiff's remaining claims depend on the premise that Speedpay was a "money transmitter" under state and federal law. Because this premise is wrong, Speedpay respectfully requests that the Court grant its motion for summary judgment on all remaining claims, award Speedpay its costs, and award any other appropriate relief.

Dated: November 7, 2016

Respectfully submitted,

<u>/s/ Elio F. Martinez, Jr.</u>

Elio F. Martinez, Jr.
Espinosa, Trueba & Martinez
1428 Brickell Avenue, Suite 100
Miami, FL 33131
(305) 854-0900
(855) 854-0900 (fax)
emartinez@etlaw.com

Eric S. Mattson (admitted *pro hac vice*)
emattson@sidley.com
Lisa E. Schwartz (admitted *pro hac vice*)
lschwartz@sidley.com
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000
(312) 853-7036 (fax)

Daniel R. Taylor, Jr.
dantaylor@kilpatricktownsend.com

Susan H. Boyles
sboyles@kilpatricktownsend.com
Joseph S. Dowdy
jdowdy@kilpatricktownsend.com
Kilpatrick Townsend & Stockton LLP
1001 West Fourth Street
Winston-Salem, NC 27101
(336) 607-7300

*Counsel for Defendant Speedpay, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on November 7, 2016, a copy of the foregoing

**Defendant's Memorandum in Support of its Motion for Summary Judgment** was filed with

the Clerk of Court using the ECF system, which will automatically send notification of the filing

to all attorneys of record.


<u>/s/ Elio F. Martinez, Jr.</u>

13