UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-80164-CIV-MARRA

CARYN PINCUS, an individual, on behalf
of herself and all others similarly situated,

Plaintiff,

vs.

SPEEDPAY, INC., a New York corporation,

Defendant.
_____/

## OPINION AND ORDER

This cause is before the Court upon Defendant's Motion for Summary Judgment (DE 83); Plaintiff's Motion for Leave to File Surreply (DE 110); Plaintiff's Motion to File Supplemental Authority (DE 115) and Plaintiff's Motion for Leave to File Short, Post-Hearing Brief (DE 128). The Court has carefully considered the Motions and is otherwise fully advised in the premises.

I. Background.

This action was initiated by Plaintiff Caryn Pincus ("Plaintiff") against Defendant Speedpay, Inc. ("Speedpay") for damages arising from Speedpay's alleged illegal activity as an unlicensed "money transmitter" in the State of Florida in violation of Florida Statute §560.204.

The facts, as culled from affidavits, exhibits, depositions, answers, answers to interrogatories and reasonably inferred therefrom in the light most favorable for the Plaintiff, for the purpose of this motion, are as follows:

Speedpay provides bill payment processing services to Florida Power & Light Company ("FPL") and other clients to enable them to receive payments from their customers. (Pl. Resp. to

Def. Statement ¶ 1, DE 98-1.) FPL customers can pay their electric bills in a variety of ways, ranging from the traditional method of mailing a check, to the more recent option of calling a toll-free number and using a credit card. (DE 98-1 at ¶ 2.) Speedpay provides the technology and infrastructure that enables FPL to accept payments from customers who choose the pay-by-phone service. (DE 98-1 at ¶ 3.)

Plaintiff and her husband usually pay their electric bills via a cost-free method: authorizing FPL to take money directly from their checking account. (DE 98-1 at ¶ 4.) On two occasions, Plaintiff and her husband were short on cash and chose to pay their bill with a credit card using Defendants's "pay by phone" system. (DE 98-1 at ¶ 5.) Plaintiff also chose to pay her bills this way to avoid incurring late fees. (DE 98-1 at ¶ 6.) Plaintiff chose to proceed with the transaction after being told she would incur a convenience fee of $3.25 (DE 98-1 at ¶ 7.) Defendant correctly processed Plaintiff's transactions, and Plaintiff's bills were, in fact, paid. (DE 98-1 at ¶ 8.)

After Plaintiff provided her credit card information and indicated how much she wanted to pay, her payments were processed through the following automated steps: First, Defendant confirmed that the payment Plaintiff wanted to make was consistent with FPL's requirement, such as the permissible per-payment range for residential customers paying by telephone. Second, Defendant gave Plaintiff's information to FPL's "merchant acquiring bank" - a bank that helps merchants settle credit and debit card transactions - and asked the bank to confirm that Plaintiff had enough money on her credit limit to cover the transaction. Third, Plaintiff's bank placed a hold on Plaintiff's credit line for the amount of her requested payment. At this point in the process, Plaintiff was still on the telephone. Fourth, within minutes of Plaintiff hanging up

the telephone, Defendant notified FPL that Plaintiff had paid her bill. Fifth, FPL's merchant acquiring bank collected money from Plaintiff's bank.  Separately, as a service to FPL, Defendant caused funds in the amount of Plaintiff's electric bill to be pre-funded to FPL. Defendant directed that money in an account belonging to Defendant's affiliate, Western Union Financial Services, Inc. ("Western Union"), be transferred to an account belonging to FPL's merchant acquiring bank, which caused funds in that same amount (plus the $3.25 convenience fee), to be deposited into a Western Union account. (DE 98-1 at ¶ 9.)  Western Union is a licensed money transmitter in the State of Florida. (DE 98-1 at ¶ 10.)

Funds in the amount of Plaintiff's electric bill were sent to FPL's bank account before FPL's merchant acquiring bank deposited money into an account of Defendants' affiliate. (DE 98-1 at ¶ 11.)  For each of Plaintiff's pay-by-phone transactions, Speedpay facilitated the payment of Plaintiff's electric bill and operated through the Automated Clearing House system, or "ACH," a well-recognized network for facilitating financial transactions through a clearance and settlement system. Defendant provided this bill payment service pursuant to a formal agreement with the payee, FPL.  (DE 98-1 at ¶ 14.)

Defendant moves for summary judgment on the basis that, despite Plaintiff's contention, it is not a money transmitter and therefore did not need a money transmission license.  Plaintiff disagrees.  Both parties discuss the applicability of Florida Statute § 560.103(23), which defines a money transmitter under Florida law.

II.  Summary Judgment Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant  is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the

non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. 242, 249-50.

III. Discussion

The question to be determined in this case is whether Speedpay is a "money transmitter" as defined by Florida Statute § 560.103(23). Under that statute, a money transmitter is a corporation that "receives currency, monetary value, or payment instruments for the purpose of transmitting the same by any means, including transmission by wire, facsimile, electronic transfer, courier, the Internet, or through bill payment services or other businesses that facilitate such transfer within this country, or to or from this country." Florida Statute § 560.103(23).

A court's authority to "interpret statutory language is constrained by the plain meaning of the statutory language in the context of the entire statute, as assisted by the canons of statutory construction." Edison v. Douberly, 604 F.3d 1307, 1310 (11th Cir. 2010) (citing Nguyen v. United States, 556 F.3d 1244, 1252–57 (11th Cir. 2009); Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1167 (11th Cir. 2003)). Courts do not "look at one word or term in isolation but rather look to the entire statute and its context." Id. (citing United States v. Silva, 443 F.3d 795, 798 (11th Cir. 2006)). "When the language of a statute is clear and unambiguous and conveys a clear and definite meaning, the statute must be given its plain and ordinary meaning." Mike Smith Pontiac, GMC, Inc. v. Mercedes-Benz of N. Am., Inc., 32 F.3d 528, 531 (11th Cir. 1994) (citing In re McCollam, 612 So.2d 572, 573 (Fla. 1993); Birnholz v. 44 Wall Street Fund, Inc., 880 F.2d 335, 341 (11th Cir. 1989)); see also Sinclair v. De Jay Corp., 170 F.3d 1045, 1047 (11th Cir. 1999) (citing Starr Tyme, Inc. v. Cohen, 659 So.2d 1064, 1067 (Fla. 1995) (same).

A careful reading of the statute demonstrates that a "money transmitter" is a corporation

5

that "receives currency, monetary value, or payment instruments for the purpose of transmitting the same by any means." Florida Statute § 560.103(23). Thus, to be a money transmitter under Florida law, Speedpay must "receive" currency or some other monetary instrument, that is to say, it must either "take" the currency, "come into possession" of the currency or "get [currency] from [an] outside source." Black's Law Dictionary (10th ed. 2014). In addition, the corporation must "receive" the currency "for the purpose of transmitting" it. The statute then sets forth various "means" by which this transmission may occur, including: (1) wire; (2) facsimile; (3) electronic transfer; (4) courier; (5) the Internet or (6) through bill payment services or other businesses that facilitate such transfer.

Plaintiff contends that Speedpay meets the definition of "money transmitter" because it provides bill payment services that facilitate the transfer of currency, without regard to whether it receives the currency. The Court rejects Plaintiff's invitation to interpret the statute to mean that a bill payment service, like Speedpay, is <u>per se</u> a money transmitter regardless of whether it receives currency during a transaction. To the contrary, an essential prerequisite to being a "money transmitter" is that the corporation " receives" the currency. The fact that a corporation engages in conduct which is one of the recognized "means" of transmitting currency is insufficient. The statute requires both the "receipt" of the currency, one element of the definition, for the purpose of "transmitting" it, a separate and distinct element of the definition. Plaintiff's reading of the statute, which places sole reliance on Speedpay falling within the ambit of a "means" of transmitting the currency, and which ignores the other essential element of the definition, is rejected.

The correctness of the Court's interpretation of the statute is demonstrated by the fact that

the "means" clause upon which Plaintiff relies cannot stand independent of the clause requiring "receipt" of the currency. If Plaintiff's interpretation was correct, one should be able to read the statute without regard to the "receipt" clause, but one cannot do so. Under Plaintiff's interpretation, "money transmitter means a corporation through bill paying services or other businesses that facilitate *such transfer* within this country, or to or from this country." (emphasis added). The words "such transfer" have no meaning unless they refer back to the currency that was "received" for the purpose of "transmitting" it.

Under Plaintiff's interpretation, if Plaintiff decided to pay her FPL bill by writing a check and mailing it through a private delivery company, that company would be "facilitating" a money transmission, even if the check (i.e., "payment instrument") was placed in an envelope and delivered to FPL, without the delivery company ever touching the "payment instrument." In that scenario, the delivery company would be transmitting the "payment instrument" "by any means," despite having never received any money from the "payment instrument." Such a result could not have been what the Florida legislature intended.

The undisputed record evidence shows that when Plaintiff made her payment via telephone, FPL's merchant acquiring bank obtained a hold over Plaintiff's bank account and Defendant notified FPL that Plaintiff paid her bill. In other words, FPL's merchant acquiring bank received money directly from Plaintiff's bank. Thus, Defendant did not "receive" money and transmit it to FPL.[1] Because Defendant did not "receive" the money, it is not a "money

---

[1] Plaintiff asserts that Defendant "concedes" it receives and transmits funds. (DE 98 at 9.) In support, Plaintiff cites to testimony from a defense witness who stated that "the Speedpay service is used to allow our clients to accept payments from their consumers" and "Speedpay provides the technology and infrastructure to allow our clients to accept payment from their customers." (DE 98-1 at 16.) These statements do not create a genuine issue of material fact

7

transmitter" under Florida Statute § 560.103(23) and therefore did not require a license. As a result, Plaintiff's claim fails as a matter of law.

IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1) Defendant's Motion for Summary Judgment (DE 83) is **GRANTED**.[2]

2) Plaintiff's Motion for Leave to File Surreply (DE 110) is **GRANTED**.

3) Plaintiff's Motion to File Supplemental Authority (DE 115) is **GRANTED.**

4) Plaintiff's Motion for Leave to File Short, Post-Hearing Brief (DE 128) is **DENIED**.

5) The Court will separately enter Judgment for Defendant.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 26th June, 2017.

_____
KENNETH A. MARRA
United States District Judge

---

with respect to Defendant's receipt of funds.

[2] With respect to Plaintiff's request for summary judgment in her response memorandum, the Court notes that Plaintiff subsequently requested that the Court defer ruling on that request until and if Defendant's motion for summary judgment was denied. (DE 123.) The request is now moot.